IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
THEODORE M. MIGLIARESE,      )
                             )
          Plaintiff,         )
                             )
     v.                      )    1:05CV1094
                             )
UNITED STATES OF AMERICA,    )
                             )
          Defendant.         )
```

## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

This case comes before the Court on the parties' cross-motions for summary judgment.[1] The facts relating to Plaintiff's underlying claim are as follows. Plaintiff, along with Joseph D'Alessio and Scott R. Cardini, was a partner in a business enterprise known as Joseph D'Alessio & Company ("JDA"). On February 21, 2000, the partnership submitted a bid to the United States Maritime Administration ("MARAD") to purchase two former military vessels for refitting and sale. As part of the bid, Plaintiff submitted a good faith deposit of $100,000 on behalf of JDA.

---

[1] Defendant contends that Plaintiff's motion for summary judgment (docket no. 31), which Plaintiff filed as part of his response to Defendant's motion (docket no. 27), was untimely filed and should not be considered. The Court acknowledges that Plaintiff's motion was tardy under Local Rule 56.1(b), but it also notes that courts may consider such motions under Local Rule 56.1(g) where "consideration will not cause delay to the proceedings." In the present case, the fact that Plaintiff combined his motion for summary judgment with his response, actually streamlined the consideration of both motions and greatly reduced, if not eliminated, any delay. Further, as will be discussed below, Defendant's motion is moot given the Court's ultimate decision.

Ultimately, JDA was not awarded the contract with MARAD, and the latter returned JDA's deposit on January 17, 2001. Plaintiff, however, alleges that the funds were never returned to his account as the bid paperwork allegedly instructed. On October 17, 2003, he submitted a Freedom of Information Act ("FOIA") request through counsel to determine the fate of his deposit, and on December 15, 2003, Plaintiff received documents indicating that MARAD returned the deposit to Joseph D'Alessio, Plaintiff's partner in JDA. Plaintiff has been unable to locate D'Alessio, who apparently absconded with the funds. In light of these facts, Plaintiff's counsel sent a letter to MARAD on January 31, 2005 (1) asserting that the agency negligently refunded the bid deposit and (2) demanding the return of his money plus interest.[2] Plaintiff contends he did not receive a response to his demand letter, and on December 14, 2005, he filed the present lawsuit asserting a negligence claim against Defendant for its alleged failure to

---

[2]Plaintiff claims that this letter constitutes an administrative claim. Defendant counters that the letter should not be so construed because, in addition to the fixed sum of $100,000.00, the letter asks for interest and other damages, but fails to set out the bases for such interest and damages. Defendant also says that the letter does not constitute a claim because it merely says that the money was sent to Mr. D'Alessio (Plaintiff's partner), but fails to give any reason why this constituted negligence and fails to show Plaintiff had exclusive right to the $100,000.00. Defendant raises some important points casting doubt on the viability and validity of this so-called claim, (see Donahue v. U.S. Transp. Sec. Admin., 457 F. Supp. 2d 137 (E.D.N.Y. Oct 23, 2006)), but the Court need not resolve them because the case will be disposed of on other grounds.

return the funds to their rightful owner.[3]  Following the close of the discovery period, both parties moved for summary judgment.

The main argument put forth by Defendant, and the one the Court will consider, contends that the January 2005 "demand" letter was submitted well beyond two years from the January 2001 return of the deposit and, therefore, beyond the statute of limitations. The Court agrees.  To better understand this matter, the Court will provide further details based on the factual descriptions set out in Plaintiff's brief.

Plaintiff states that on February 21, 2000, Joseph D'Alessio & Company, Inc. submitted two bids for the reconstructing of the vessels.  "The bid submitted by Joseph D'Alessio and Co., Inc. was made on behalf of a partnership consisting of Migliarese, Defendant Joseph D'Alessio (hereinafter "D'Alessio") and Scott R. Caridi [sic].  The Partnership Agreement between the individuals was prepared in accordance with and pursuant to the laws of the State of North Carolina." (Pl.'s Br. 2.)  According to Plaintiff, "[o]n or about February 23, 2000, a deposit of $100,000.00 was submitted to MARAD's account by Migliarese in support of a bid submitted by Joseph D'Alessio and Co., Inc." (Id.)  The wire transfer was made from Plaintiff's account at Central Carolina Bank.  The special instructions indicated it was for "I.F.B. No. Exc. 8641" (the bid number for the two ships) and "Joseph D'Alessio & Co., Inc."

---

[3]Nowhere does Plaintiff convincingly explain why returning funds submitted on behalf of a partnership to a member of that partnership constitutes negligence.  However, although the Court has grave doubts as to this issue, it need not be resolved in light of Plaintiff's failure to file his claim within the applicable statute of limitations.

-3-

(Pl.'s Br., Ex. A.) Six months after those funds were sent, the three partners entered into an agreement indicating that if the project did not go forward, the parties would be made whole according to the investment which they made. (See Pl.'s Br., Ex. B.) In his brief, Plaintiff states that this agreement called for the return of the $100,000.00 deposited to the MARAD account. However, a careful reading of the agreement only discloses that Plaintiff would be returned $100,000.00 in U.S. currency and the other parties in differing amounts of U.S. currency. This agreement never states that Plaintiff would have returned to him the $100,000.00 deposited to the MARAD account as he claims in his brief.

Plaintiff contends that as a result of the Freedom of Information Act request, he received documents showing Defendant's obligation to return the funds directly to him. The first document he cites appears to be a "message summary and detail" concerning receipt of the $100,000.00. Plaintiff points out that this document shows that he is listed as the originator. However, this document also indicates that the originator to the beneficiary (MARAD) is, in fact, Joseph D'Alessio & Co., Inc. with respect to project IFB # EXC 8641. Next, Plaintiff refers to a December 4, 2000 memorandum from MARAD concerning the refund of the bid deposit. (Pl.'s Br., Ex. E.) Plaintiff contends that this document directs the Director to make arrangements for a refund of the $100,000.00 bid deposit to Joseph D'Alessio & Co., Inc., care of Central Durham Bank, Migliarese's bank, where the funds

-4-

originated from, and this basically is true. (Pl.'s Br. 3-4.) In order to continue with the return of the bid deposit, MARAD contacted Joseph D'Alessio in order to verify the bank and account the funds should be sent to. (Pl.'s Br., Ex. G.) D'Alessio replied that the funds should be sent to First Union National Bank with the account name "2011 Lemoine Ave. Corp." Plaintiff contends that the negligence occurred when an employee ignored the instructions allegedly previously set out in the December 4, 2000 memorandum to have the funds deposited back to Central Durham Bank and, instead, used the updated information.

Plaintiff fails to explain why it was improper for MARAD to contact Joseph D'Alessio, the apparent contact person, to receive updated instructions. Plaintiff has not shown that when the bid was submitted, that MARAD was informed that any bid deposit should go back to Migliarese and his bank account, as opposed to Joseph D'Alessio. Rather, it appears from the evidence that Plaintiff let Mr. D'Alessio be the contact person who would be looking after Plaintiff's affairs with MARAD. Plaintiff has failed to produce any evidence that MARAD had any information that Plaintiff should be contacted with respect to information concerning the bid and the returning of the deposit money. Nor has Plaintiff shown that MARAD had any information concerning the details of the partnership with respect to the bid.

**Discussion**

The Federal Tort Claims Act ("FTCA") provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Because the FTCA constitutes a waiver of sovereign immunity by the government, it must be strictly construed. United States v. Kubrick, 444 U.S. 111, 117-118 (1970). As a general rule, FTCA claims follow the "injury occurrence rule," which defines the accrual date as the actual time of injury. Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998); Cannon v. United States, 338 F.3d 1183, 1190 (10th Cir. 2003); Bennett ex rel. Estate of Bennett v. United States, 429 F. Supp. 2d 270, 276 (D. Mass. 2006). In the instant case, the actual injury occurred on January 17, 2001, the day MARAD returned the deposit to Joseph D'Alessio.

As noted in Bennett, the Supreme Court in Kubrick, created an exception to the general rule for medical malpractice cases. Id. In that situation, the "discovery rule," also known as the "diligence-discovery rule," may apply. See TRW Inc. v. Andrews, 534 U.S. 19, 27 (2001)(citing Holmberg v. Armbrecht, 327 U.S. 392 (1946)). Under the discovery rule, "'accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.'" Kronisch, 150 F.3d at 121 (quoting Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982)).

Some courts have expanded the discovery rule outside of the malpractice area in situations where the plaintiff is "blamelessly ignorant" of the existence and cause of injury. Severtson v. United States, 806 F. Supp. 97, 99 (E.D. La. 1992)(citing cases). The exception also applies when the government conceals acts giving rise to the claim or engages in intentional (perhaps criminal) acts. Kronisch, 150 F.3d at 121; Bennett, 429 F. Supp. 2d at 276; see also Kent Sinclair & Charles A. Szypszak, Limitations of Action Under the FTCA: A Synthesis and Proposal, 28 Harv. J. on Legis. 1 (1991). Plaintiff argues that this discovery rule governs the instant case and that, under it, his claim was timely submitted within two years of his receipt of the Freedom of Information Act material. For the reasons set out below, this Court disagrees with both of Plaintiff's contentions.

In TRW Inc., (which did not involve the FTCA statute of limitations) the Supreme Court held that with respect to federal statutes of limitation, the discovery rule is not "a general presumption applicable across all contexts." 534 U.S. at 27. Its application is limited to cases "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part." Id.(quoting Holmberg, 327 U.S. at 397). The Supreme Court further noted that while lower courts have often applied a discovery accrual rule when the statute was silent, it had only applied the discovery rule in two contexts, medical malpractice and latent disease, where the dangers of fraud or concealment are particularly high. TRW, 534 U.S. at 27(citing

-7-

Rotella v. Wood, 528 U.S. 549, 555 (2000); United States v. Kubrick, 444 U.S. 111 (1979); Urie v. Thompson, 337 U.S. 163 (1949)).

In the instant case, Plaintiff makes no claim that his injury was caused by Defendant's fraudulent actions or that Defendant in any way concealed his injury or its cause from him. He simply argues that, because "[t]here is absolutely no way [he] could have or should have known that [a] negligent act occurred" on January 17, 2001, the day MARAD refunded the bid deposit to D'Alessio, it would be "manifestly unfair" to apply that date as his injury's date of accrual. (Pl.'s Br. 7.) Because the FTCA statute of limitations must be strictly construed, Plaintiff faces a very large hurdle in trying to carve out another exception to the accrual rule based solely on the "special facts" of his case.

To see whether another exception to the accrual rule should be established, it will be helpful to look at the reasons for applying a discovery accrual rule in the medical malpractice and latent disease contexts. There is a critical distinction between those situations and Plaintiff's. In medical malpractice cases, "'the injury or its cause may not be manifested to the plaintiff until many years after'" the wrongful event causing the injury, and the character of the injury may require the expertise of the physician. Johnson v. United States, 460 F.3d 616, 621 (5th Cir. 2006)(quoting Waits v. United States, 611 F.2d 550, 552 (5th Cir. 1980)); Sinclair & Szypszak, supra. In light of this, accrual occurs only when a plaintiff has sufficient information to discover both the

-8-

existence and cause of his injury, or, in other words, when the plaintiff is, or should be through the exercise of reasonable diligence, on notice of the wrong which injured him. See id.; Miller v. Philadelphia Geriatric Ctr., 463 F.3d 266, 271 (3d Cir. 2006). In latent disease cases, the application of the discovery rule is even more important. While latent diseases, like medical malpractice injuries, may not manifest themselves until long after the associated wrongful acts take place, in addition, many such diseases may not even come into existence until years after tortious exposure. See Williams v. E.I. DuPont de Nemours and Co., 11 F.3d 464, 466 (4th Cir. 1993). Thus, the factual bases for both medical malpractice and latent disease cases are, in a practical sense, often "inherently unknowable" at the time of the alleged wrongful acts. See Ramirez-Carlo v. United States, 496 F.3d 41, 47 (1st Cir. 2007). "'Inherently unknowable' means that the factual basis is 'incapable of detection by the wronged party through the exercise of reasonable diligence.'" Id.

In the instant case, Defendant's return of the deposit cannot be said to be an inherently unknowable event. Therefore, Plaintiff attempts to bolster his case by making a "fiduciary negligence" claim in which he assumes MARAD had some special duty to consult him prior to returning the money. However, as Defendant points out, Plaintiff fails to show any basis for the claim. Even the Wire Transfer Request and Agreement (Pl.'s Br., Ex. A) does not say the funds are to be returned to Plaintiff. Rather, the Special Instructions show only the money is being submitted for I.F.B. No.

-9-

Exc. 8641 and on behalf of Joseph D'Alessio & Co., Inc. Defendant shows that the practice of MARAD is to return funds to the actual bidder, in this case Joseph D'Alessio & Co., Inc. Plaintiff fails to show he left any instruction to MARAD to contact him with respect to the bid or the $100,000.00 deposit. The fact that Defendant initially thought of returning the money to Plaintiff's bank before verifying the information did not create a fiduciary duty. In short, Plaintiff fails to show MARAD owed him any fiduciary duty. This eliminates any possible basis for applying a discovery accrual rule to him, by comparing his situation to the physician-patient relationship or the government concealment cases wherein the discovery accrual rule has been used. See Sinclair & Szypszak, supra.

In addition, the injury in this case cannot be compared to those in the malpractice or latent disease context. In the instant case, Plaintiff's injury was a one-time occurrence. It was immediately apparent to the lay observer. It did not change form or increase over time like malpractice or latent physical injuries or developing diseases often do. Most significantly, on the day the bid was rejected and on the day Plaintiff's deposit was refunded to D'Alessio, the information regarding the funds was readily available upon request. Both these days were long before the December 2003 accrual date Plaintiff suggests.[4]

---

[4] Plaintiff contends that the cause of action did not accrue until December 15, 2003, when he received his Freedom of Information Act request.

-10-

Plaintiff relies on the fact that his partners refused to answer his inquiries and absconded with the money as a reason for not knowing about his injury. However, the Court is not aware of any authority making the government responsible for the acts of third parties, much less Plaintiff's own business partners. Plaintiff's failure to keep himself informed through his business partners, his failure to make sure the deposit would be returned to him in his initial dealing with MARAD, and his failure in not keeping in regular contact with MARAD concerning the bid, prevents him from being deemed "Blamelessly Ignorant." Faced with these facts, the Court cannot conclude that Plaintiff's injury or its cause were "inherently unknowable," thereby meriting use of the discovery accrual rule.

Moreover, even in medical cases, the plaintiff must exercise diligence to take advantage of the discovery rule. Courts have held that "a plaintiff with knowledge of the injury and of a 'probable' cause of that injury [has] a duty 'to inquire in the medical and legal community' and 'to seek professional advice'" regarding the causal connection between the two. <u>Johnson</u>, 460 F.3d at 622. A claim accrues at the time when the duty to inquire arises. Even though "knowledge of the injury" involves more than "a mere hunch, hint, suspicion, or rumor of a claim, . . . such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of diligence." <u>Kronisch</u>, 150 F.3d at 121 (internal citations omitted).

Were the Court to apply these guidelines in the present case, it is again clear that Plaintiff's claim accrued well before December 15, 2003--the date he received the Freedom of Information Act documents. Plaintiff either was aware or should have been aware of the following facts beginning in 2001: (1) the MARAD bid had not been awarded; (2) the deposit was not returned to him; and (3) he could no longer locate the other members of the partnership. Given these facts, two possibilities should have been clear to Plaintiff: either Defendant still had his deposit, or one or both of his business partners had absconded with it. He could and should have contacted MARAD, but apparently did not. The fact that he could not contact his business partners should have immediately placed the possibility of his partners' betrayal at the top of the list.

Even if Plaintiff was unsure how to proceed based on this knowledge, the facts were open to all and such that a reasonable person would have been prompted to seek legal advice as to his options. Plaintiff did not immediately do so. For over two years, his only action was to try "several times" to contact D'Alessio and Cardini. (Pl.'s Br. 7.) Plaintiff does not indicate that he ever tried to contact Defendant, through MARAD or otherwise, during this time regarding his deposit, and it was not until October 2003 that he finally contacted an attorney regarding his missing bid deposit.[5] Plaintiff's attorney immediately made document requests

---

[5]The fatal flaw in Plaintiff's argument readily reveals itself when one considers that if Plaintiff had not contacted an attorney, under his
(continued...)

under the Freedom of Information Act ("FOIA"), and just two months later, on December 15, 2003, the response to that request confirmed that the JDA's deposit had, in fact, been forwarded to D'Alessio's bank account rather than to Plaintiff's.  Because Plaintiff could have discovered this information nearly three years earlier had he diligently pursued his potential claim, even if the discovery rule were applicable to the present case, Plaintiff would not benefit thereby.  A different conclusion would undermine the purpose of the rule, that is, to place plaintiffs whose injuries or the causes of those injuries are "inherently unknowable" on equal footing with other plaintiffs.  Plaintiff's interpretation of the rule would instead reward plaintiffs for wilfully ignoring critical facts.

For this reason, and those set out in detail above, Plaintiff's negligence claim will be dismissed for failure to file an administrative claim within two years of accrual of the cause of action.  This finding renders all of the parties' other arguments moot.

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (docket no. 27) is granted, that Plaintiff's motion for summary judgment (docket no. 31) is denied, and that this action is dismissed.

*Russell A. Eliason*
**United States Magistrate Judge**

February 19, 2008

---

[5](...continued)
interpretation, the statute of limitations would still not have expired, nor would it ever.

-13-